UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH P. BOLDIGA,
    Plaintiff,


    v.                                    CIVIL ACTION NO.
                                          14-12135-MBB

FEDERAL BUREAU OF PRISONS,
    Defendant.

**MEMORANDUM AND ORDER RE:**
**DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR LACK**
**OF TIMELY SERVICE OF PROCESS AND LACK OF**
**SUBJECT MATTER JURISDICTION (DOCKET**
**ENTRY # 9); MOTION FOR DAMAGES**
**(DOCKET ENTRY # 28)**

**June 3, 2015**
**BOWLER, U.S.M.J.**

On May 15, 2014, plaintiff Joseph P. Boldiga ("plaintiff"),
a former inmate at the Federal Medical Center in Devens,
Massachusetts ("FMC Devens"), filed a complaint against defendant
Federal Bureau of Prisons ("the FBP") based on inadequate medical
care at FMC Devens of his chronic inflammatory demyelinating
polyneuropathy ("CIDP"). (Docket Entry # 1). The FBP moves to
dismiss the complaint under Fed.R.Civ.P. 12(b)(5) ("Rule
12(b)(5)") for improper service of process. (Docket Entry # 10).
It also seeks to dismiss the complaint as untimely under the
Federal Tort Claims Act, 28 U.S.C. § 2401(b), pursuant to
Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1)"). (Docket Entry # 10).
The FBP further contends that the United States is the only
proper defendant.

Plaintiff, proceeding pro se, submits that the FBP did not send a claim denial letter by certified mail. (Docket Entry # 12). Noting "[i]t was [not] until April 30, 2014," that an electromyography ("EMG") conclusively showed CIDP, plaintiff asks for "indulgence in [any] tardiness." (Docket Entry # 1). In light of his pro se status, this court construes the statement as asserting that the discovery rule salvages any untimeliness. Plaintiff, who filed various medical documents to support the merits of the inadequate medical care claim, additionally argues that denying the claim for lack of service or untimeliness denies him a remedy in violation of the Due Process Clause. (Docket Entry # 13).

<u>STANDARD OF REVIEW</u>

"When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." <u>Merlonghi v. United States</u>, 620 F.3d 50, 54 (1st Cir. 2010); <u>Sanchez ex rel. D.R.-S. v. United States</u>, 671 F.3d 86, 92 (1st Cir. 2012), <u>cert.</u> <u>denied</u>, 133 S.Ct. 1631 (2013) ("'credit[ing] the plaintiff's well-pled factual allegations and draw[ing] all reasonable inferences in the plaintiff's favor'" under Rule 12(b)(1)). "The district court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" <u>Merlonghi v. United States</u>, 620 F.3d at 54 (quoting

<u>Aversa v. United States</u>, 99 F.3d 1200, 1210 (1st Cir. 1996)).  As
to the Rule 12(b)(5) challenge to service of the summons and
complaint, this court can "look beyond the pleadings and may
consider affidavits and other documents to determine whether
process was properly served, however, any factual ambiguities are
to be resolved squarely in the plaintiff's favor."  <u>Morse v.</u>
<u>Massachusetts Executive Office of Public Safety</u>, 2013 WL 1397736,
at *1 (D.Mass. April 4, 2013).

BACKGROUND

The complaint alleges that plaintiff received "no medical
care for the CIDP while" incarcerated at FMC Devens.  In
particular, at an October 15, 2011 office visit, a nurse
practitioner disregarded the progressive deterioration of
plaintiff's condition and his swollen legs.  She also failed to
perform a complete physical examination.  The nurse practitioner
then "dismissed [plaintiff's] complaints."  (Docket Entry # 1).

Prior to his incarceration at FMC Devens, plaintiff
underwent physical examinations and testing at Neurology
Associates of York Hospital in York, Maine.  (Docket Entry # 1-
2).  A clinical note for a 2010 examination reflects a past
diagnosis of CIDP by Scott Heller, M.D. at Beth Israel Deaconess
Hospital and a five day course of intravenous immunoglobulin
("IVIG").  (Docket Entry # 1-2).  After the diagnosis of CIDP and

the short course of IVIG therapy, plaintiff entered FMC Devens.[1]
Medical records provided to FMC Devens of plaintiff's treatment
before his incarceration disclose the prior history of CIDP.
(Docket Entry ## 1, 13-1).  The FBP nevertheless did not provide
medical care for the condition during plaintiff's incarceration.
(Docket Entry # 1).

Before plaintiff's October 2013 release from FMC Devens, he
submitted an administrative claim to the FBP in February 2013
complaining about the failure to provide IVIG therapy for his
CIDP at the October 15, 2011 visit.  (Docket Entry # 1-2).  By
letter dated August 9, 2013, the Regional Counsel of the
northeast regional office of the FBP located in Philadelphia,
Pennsylvania denied the claim.  The letter recites that the
Regional Counsel sent the letter "Via Certified and Return
Receipt Mail" to plaintiff at his FMC Devens address.  (Docket
Entry # 1-2, p. 1).  It also sets out certain medical treatment
plaintiff received at FMC Devens, including a purported April 29,
2011 evaluation by a neurologist regarding plaintiff's CIDP and
plaintiff's purported refusals to undergo prednisone therapy.[2]

_____

[1]  In a motion not to dismiss the complaint, construed as an
opposition to the FBP's motion to dismiss, plaintiff represents
that he entered FMC Devens on January 7, 2011.  (Docket Entry #
18).

[2]  The facts regarding plaintiff's medical treatment are set
out in medical records.  The assertions of treatment in the
August 9, 2013 letter are not evidence of such treatment and are
not considered true for purposes of the present motion.

4

(Docket Entry # 1-2).

Significantly, the letter informed plaintiff that, if dissatisfied with the decision, he could "bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this letter," i.e., February 9, 2014. (Docket Entry # 1-2). Plaintiff filed this action on May 15, 2014.

By affidavit, plaintiff states that he served the summons and complaint on May 15, 2014, on "J. Brown," a person designated to accept service on behalf of the FBP, at the agency's northeast regional office in Philadelphia. (Docket Entry # 6). On May 22, 2015, a Process Server also served the FBP by leaving copies of the summons and complaint with an authorized agent at the FBP's northeast regional office in Philadelphia. (Docket Entry # 7). On the same day, the Process Server served the FBP by leaving copies of the summons and complaint with an authorized agent at the United States Attorney's office in Philadelphia. (Docket Entry # 7).

DISCUSSION

The FBP's motion is twofold. First, it submits that plaintiff did not effectuate service of process. Second, the FBP argues that the inadequate medical care claim brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680 ("FTCA"), is untimely because plaintiff did not file suit within

six months after the FBP mailed the August 9, 2013 letter denying the claim.

A.  Timeliness

Addressing the limitations argument, a suit against the FBP, an agency of the United States, is tantamount to a suit against the United States which, as a sovereign, is immune from suit without its prior consent.  United States v. Dalm, 494 U.S. 596, 608 (1990); Commonwealth of Puerto Rico v. United States, 490 F.3d 50, 57 (1st Cir. 2007) ("'as an attribute of sovereign immunity, the United States and its agencies may not be subject to judicial proceedings unless there has been an express waiver of [sovereign] immunity'"); Sarit v. U.S. Drug Enforcement Administration, 987 F.2d 10, 16 (1st Cir. 1993) (Fourth Amendment claim directed at agency of United States implicates sovereign immunity).  Accordingly, absent an express waiver of immunity, the FBP is immune from suit.  See Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 36 (1st Cir. 2006) ("United States, as a sovereign, cannot be sued absent an express waiver of its immunity").

By enacting the FTCA, Congress expressly "waived the government's sovereign immunity with respect to private tort actions."  Roman-Cancel v. United States, 613 F.3d 37, 41 (1st Cir. 2010); Roman v. Townsend, 224 F.3d 24, 27 (1st Cir. 2000) (FTCA waives "sovereign immunity of the United States with respect to tort claims"); see 28 U.S.C. § 2674.  The gravamen of

6

the complaint seeks monetary relief and consists of a tort claim against the FBP for inadequate medical care of plaintiff's CIDP during his incarceration at FMC Devens. The complaint also attaches copies of various sections of the FTCA. (Docket Entry # 1-2). As such, the complaint and the cause of action set out therein fall squarely within the scope of the FTCA.

As expressed in no uncertain terms by the First Circuit in Roman, "the FTCA requires that the named defendant in an FTCA action be the United States and only the United States." Roman v. Townsend, 224 F.3d at 27; see 28 U.S.C. §§ 1346(b), 2674, 2679(a).[3] Hence, the United States is the proper defendant.

The limited waiver of sovereign immunity under the FTCA is "'closely circumscribed by the terms of the statute.'" Barrett ex rel. Estate of Barrett v. United States, 462 F.3d at 36. Specifically, the waiver is restricted by "a series of fixed time limits" in section 2401(b). Roman-Cancel v. United States, 613 F.3d at 41; see Sanchez v. United States, 740 F.3d 47, 50 (1st Cir. 2014), cert. denied, 135 S.Ct. 54 (2014) ("FTCA's limited waiver of immunity comes with an expiration date"). The language of section 2401(b) "forever" bars a tort claim against the United States "unless it is presented in writing to the appropriate

---

[3]   Section 2679(a) unambiguously states that, "The authority of any federal agency to . . . be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive."  28 U.S.C. § 2679(a).

Federal agency within two years after such claim accrues *or* unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b) (emphasis added). Notwithstanding the disjunctive language, both time requirements "must be satisfied." Sanchez v. United States, 740 F.3d at 50 n.6.

Addressing the latter requirement, section 2401(b) requires plaintiff to bring suit within six months "after the date of mailing, by certified or registered mail, of the notice" of the denial. 28 U.S.C. § 2401(b). An "action is begun" within the meaning of section 2401(b) on the date the complaint is filed, i.e., May 15, 2014. See Barrett ex rel. Estate of Barrett v. United States, 462 F.3d at 37. The temporal parameters of section 2401(b) are strictly construed. See Roman-Cancel v. United States, 613 F.3d at 41 ("temporal parameters [in section 2401(b)] are strictly construed in favor of the sovereign").

Plaintiff asserts, without documentary support, that the FBP did not send the letter by certified mail.[4] (Docket Entry # 12). As stated in the August 9, 2013 denial letter, however, Regional Counsel mailed the letter "[v]ia [c]ertified" mail to plaintiff's institutional address at FMC Devens. The Rule 12(b)(1) record therefore unerringly shows that the FBP mailed the denial letter

---

[4] The assertion is not set out in the complaint.

by certified mail in accordance with section 2401(b).  See Bryant v. Carlson, 652 F.Supp. 1286, 1287 (D.D.C. 1987) (sending notice by certified mail to warden followed by delivery to inmate complied with section 2401(b)).  Plaintiff's allegation that he did not receive the documents by certified mail (Docket Entry # 12), unaccompanied by an affidavit or any other exhibit, document or evidence, does not create a factual dispute in light of the language in the denial letter.

The six month time period expired on February 9, 2014, more than three months before plaintiff filed suit.  Because "compliance with the six month time limit under the FTCA is a condition of the United States' waiver of sovereign immunity, failure to comply is a fatal defect."  Velez-Diaz v. United States, 507 F.3d 717, 720 (1st Cir. 2007) (citation omitted); Roman-Cancel v. United States, 613 F.3d at 41 (section 2401(b)'s limitations period "constitutes a condition of the immunity waiver, and its expiration extinguishes any potential governmental liability").

Plaintiff nevertheless asks this court to excuse or indulge any untimeliness.  (Docket Entry # 1).  He submits that the April 30, 2014 definitive diagnosis excuses his tardiness in filing suit.  (Docket Entry # 1).  The start date of the six month time period is set out in the statute and does not refer to an "accrual" of the cause of action.  As stated in the statute, the

six month period begins on "the date of the mailing" irrespective of a definitive diagnosis of the CIDP or other "'medical pot holes'" the complaint depicts.[5] (Docket Entry # 1).

Construing plaintiff's argument as seeking equitable tolling, it is debatable whether the doctrine applies to the timeliness requirements in section 2401(b) because they constitute conditions of the FTCA's waiver of sovereign immunity. See Sanchez v. United States, 740 F.3d at 53 (acknowledging the "long running debate" over the application of equitable tolling). The First Circuit in Sanchez explained that timeliness may be seen as either a jurisdictional bar or as a "nonjurisdictional, but essential, claim-processing rule[]."[6] Id. at 51. Regardless, assuming that the doctrine applies, the circumstances do not warrant its application.

Undeniably, "'due diligence is a sine qua non for equitable tolling.'" Id. at 55 (quoting Donahue v. United States, 634 F.3d at 629). Ignorance stemming from inaction does not provide a basis to establish diligence. Id. The record is bereft of any attempt or effort by plaintiff to file the complaint between

_____

[5] In contrast, the claim under section 2401(b) arises "within two years after such claim accrues . . .." 28 U.S.C. § 2401(b); see generally Donahue v. United States, 634 F.3d 615 (1st Cir. 2011) (addressing the discovery rule and equitable tolling as applied to section 2401(b)'s two year time period).

[6] The court implied that the issue is not jurisdictional but, instead, a nonjurisdictional claim processing rule. See id. at 54.

August 9, 2013, and February 9, 2014.  Moreover, plaintiff knew
about the deadline because the August 9, 2013 letter disclosed
it.  Although plaintiff points to the April 30, 2014 EMG, the
test did not prevent plaintiff filing the complaint on or before
February 9, 2014.

It is true that equitable tolling may apply when a plaintiff
misses a deadline due to circumstances beyond his control.  See
Motta ex rel. A.M. v. United States, 717 F.3d 840, 846 (11th Cir.
2013) (discussing equitable tolling to FTCA claim); Niccolai v.
U.S. Bureau of Prisons, Director, 4 F.3d 691, 693 (8th Cir. 1993)
("generally reserv[ing] application of equitable tolling for
circumstances which were truly beyond control of the plaintiff or
for conduct of the defendant that lulled the plaintiff into
inaction") (FTCA claim); Holland v. United States, 2012 WL
4442755, at *3 (S.D.Ohio Sept. 25, 2012) ("'equitable tolling
applies only when a litigant's failure to meet a legally-mandated
deadline unavoidably arose from circumstances beyond that
litigant's control'"); Muniz-Rivera v. United States, 204
F.Supp.2d 305, 317 (D.P.R. 2002).  In the case at bar, there is
little indication that circumstances out of plaintiff's control
prevented him from filing suit within the six month time period
after August 9, 2013.  His incarceration did not prevent him from
filing the administrative claim with the FBP in February 2013 and
there is no evidence that his incarceration from August 9, 2013

11

to October 2013 prevented him from filing a complaint in this court.  The "'medical pot holes'" he describes after his release consist of restarting "Social Security and Medicare benefits" and finding a primary care physician to refer him to a neurologist.  These facts, along with the "conclusive" EMG on April 30, 2014, a date outside the six month time period, did not cause him to miss the filing deadline.  Plaintiff therefore fails in his burden to show a basis for equitable tolling.

Finally, the circumstances do not rise to the level of a fraudulent concealment on the part of the FBP.  See Donahue v. United States, 634 F.3d at 629; Rakes v. United States, 442 F.3d 7, 26 (1st Cir. 2006).  To the contrary, the denial letter advised plaintiff about the need to file suit in six months.  Equitable tolling therefore does not apply.  See, e.g., Glorioso v. F.B.I., 901 F.Supp.2d 359, 364 (E.D.N.Y. 2012) (denying tolling of section 2401(b)'s six month period because denial letter informed plaintiff of need to file suit on a certain date and plaintiff gave "no reason for his delay in filing suit that would provide a basis for equitable tolling").

As an additional means to avoid dismissal, plaintiff maintains that a dismissal would violate the Due Process Clause because it would deprive him of the only remedy to address the inadequate medical care.  (Docket Entry # 13).  The argument is not well taken.

The FTCA's limited waiver of sovereign immunity for tort claims is predicated on violations of state law. Salafia v. United States, 578 F.Supp.2d 435, 442 (D.Conn. 2008). Consequently, a plaintiff "cannot use the FTCA as a vehicle for asserting [a] federal due-process" claim. Id. (citing F.D.I.C. v. Meyer, 510 U.S. 471, 478 (1994)); F.D.I.C. v. Meyer, 510 U.S. at 475-478 (plaintiff's constitutional claim of deprivation of property interest in continued employment without due process was not cognizable under FTCA); Reunion, Inc. v. F.A.A., 719 F.Supp.2d 700, 708 (S.D.Miss. 2010) (plaintiff "has no cognizable claim under the FTCA for any alleged *due process* violation"). Plaintiff's argument therefore fails to avoid a dismissal of the complaint.

Even if a denial of due process provided a viable means to avoid dismissal, there was no due process violation. Plaintiff had an administrative process followed by an available forum in this court to address the merits of the claim. The limited time frame to file an action in this court does not contravene due process.

In sum, this action for inadequate medical treatment and medical care is subject to a dismissal with prejudice due to plaintiff's failure to comply with the six month time period to file suit. The FBP alternatively moves to dismiss this action due to the failure to properly serve the summons and complaint.

To complete the record, this court addresses the argument.

B.  Service of Process

Absent proof of service of process, a federal court lacks
jurisdiction to render judgment against a defendant.  See
Vazquez-Robles v. CommoLoCo, Inc., 757 F.3d 1, 4 (1st Cir. 2014)
("existence of such jurisdiction normally depends on legally
sufficient service of process"); United Electrical, Radio &
Machine Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085
(1st Cir. 1992) ("basis for service of process returnable to a
particular court must be grounded within a federal statute or
Civil Rule" and "service of process constitutes the vehicle by
which the court obtains jurisdiction").  Where, as here, "a
defendant seasonably challenges the adequacy of service, the
plaintiff has the burden of showing that service was proper."
Vazquez-Robles v. CommoLoCo, Inc., 757 F.3d at 4; Chapman v.
Houston Welfare Rights Organization, 441 U.S. 600, 612 n.28
(1979) ("party claiming that a court has power to grant relief in
his behalf has the burden of persuasion on the jurisdiction
issue").

Federal Rule of Civil Procedure 4(i) ("Rule 4(i)") outlines
the rules for serving the United States in Rule 4(i)(1) and for
serving an agency of the United States in Rule 4(i)(2).  Because
the United States is the proper defendant, Rule 4(i)(1) applies.[7]

_____

[7]  Even if Rule 4(i)(2) applied, this subpart requires
service on the United States in accordance with subpart (i)(1).
See Fed.R.Civ.P. 4(i)(2) (to serve "United States agency," party
must inter alia "serve the United States").  In the event the FBP

Even though plaintiff is proceeding pro se, the language of Rule 4(i) is clear and straight forward.  The rule reads as follows:

> (1) United States.  To serve the United States, a party must:
>
> (A)(i) deliver a copy of the summons and of the complaint to the United States attorney *for the district where the action is brought*--or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk--or
>
> > (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>
> (B) send a copy of each by registered or certified mail *to the Attorney General of the United States at Washington, D.C.*; . . ..

Fed.R.Civ.P. 4(i)(1) (emphasis added).  Thus, in no uncertain terms, the language of Rule 4(i)(1)(A) requires service of the summons and complaint on "the United States Attorney for the district where the action is brought," i.e., the District of Massachusetts.  Fed.R.Civ.P. 4(i)(1)(A).  Instead of serving the United States Attorney for the District of Massachusetts in Boston, plaintiff served the authorized agent of the FBP at the United States attorney's office in Philadelphia.

Rule 4(i)(B) additionally requires the plaintiff to serve the summons and complaint on "the Attorney General of the United States at Washington, D.C."  Fed.R.Civ.P. 4(i)(1)(B).  Here again, plaintiff did not comply with the terms of Rule 4(i).  As the party with the burden of proof, plaintiff provides no

_____

is the proper defendant, subpart (i)(2) sets out additional requirements.

15

evidence that he served the United States Attorney for this district, as required under Rule 4(i)(1)(A)(i), or the Attorney General of the United States in Washington, D.C., as required under Rule 4(i)(1)(A)(ii). The fact that the United States waited to file the motion to dismiss until the 120 day period in Rule 4(m) expired does not amount to a waiver of proper and timely service. See In Re City of Philadelphia Litigation, 123 F.R.D. 515, 520 (E.D.Pa. 1988) (a defendant who has not been properly served can ignore lawsuit without risk of waiving defense); see generally Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 23-24 (1st Cir. 1992) (actual notice of lawsuit, without more, does not satisfy Rule 4(d) or constitute a waiver by conduct).

Rule 4(m) requires service of the summons and complaint on a defendant within 120 days of filing the complaint. Fed.R.Civ.P. 4(m). If service is not made within the 120 day period, the court shall "dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed.R.Civ.P. 4(m). The language of Rule 4(m) therefore gives the court discretion to extend the time period. See Crispin-Taveras v. Municipality of Carolina, 647 F.3d 1, 7 (1st Cir. 2011) (citing Rule 4(m) and noting that "district court is not required to dismiss a defendant when service is not made within the 120-day deadline"). "[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an

16

appropriate period." Fed.R.Civ.P. 4(m). If plaintiff does not
show good cause by "the 14th day following the 120 day period,"
however, "the clerk shall" enter a dismissal order for failure to
effectuate service of process. LR. 4.1(b).

With respect to good cause, plaintiff's medical condition
did not prevent him from obtaining a process server to serve the
Regional Counsel at the FBP's northeast regional office. In
fact, plaintiff's health was improving after he started a course
of prednisone in February 2014. (Docket Entry # 27, pp. 4-5).
Hence, there is little, if any, indication that plaintiff's
health prevented him from sending a copy of the summons and
complaint by registered or certified mail to the United States
attorney's office in this district and to the Attorney General of
the United States in Washington, D.C.

The advisory committee notes to Rule 4(m) set out a number
of examples of good cause. See Advisory Committee Notes, Rule
4(m), 1993 Amendment; see also Laurence v. Wall, 551 F.3d 92, 94
(1st Cir. 2008) (a plaintiff proceeding in forma pauperis may
establish good cause "when either the district court or the
United States Marshals Service fails to fulfill its obligations
under section 1915(d) and Rule 4(c)(3)"). None of the examples
applies to the circumstances in the case at bar. There was no in
forma pauperis application pending during the 120 day time
period. The provisions of Rule 4(i)(4) do not apply because

plaintiff did not serve either "the United States attorney or the Attorney General of the United States" and he did not sue a United States officer or employee individually. <u>See</u> Fed.R.Civ.P. 4(i)(3), (4); Advisory Committee Notes, Rule 4(m), 1993 Amendment. The Process Server did not mistakenly effectuate service. Rather, he served the entities designated by plaintiff.

Finally, Local Rule 4.1 further mandates that parties, including parties appearing pro se, "who seek to show good cause" must file "a motion for enlargement of time under Fed.R.Civ.P. 6(b), together with a supporting affidavit." LR. 4.1(b). Plaintiff failed to comply with this procedural rule by filing a motion to extend the time period with an accompanying affidavit. <u>See</u> <u>Sutliffe v. Epping School District</u>, 584 F.3d 314, 321 (1st Cir. 2009) (plaintiffs' "pro se status did not relieve them of their responsibility to comply with procedural rules").

In sum, plaintiff did not serve the United States in accordance with Rule 4(i). Further, plaintiff failed to show good cause. Exercising this court's discretion, extending the time period to allow service of the United States is not warranted. A failure to effectuate service leads to a dismissal without prejudice. <u>See</u> <u>Saez Rivera v. Nissan Mfg. Co.</u>, 788 F.2d 819, 821 (1st Cir. 1986) ("case law is clear that a dismissal for improper service is without prejudice to refiling the case").

Here, however, the six month limitations period in section

2401(b) "forever" bars this action.  28 U.S.C. § 2401(b).  Thus,
based on the separate and alternative basis to dismiss this
action as untimely under section 2401(b), the complaint is
subject to dismissal with prejudice.

C.  <u>Motion Seeking Damages</u>

On June 1, 2015, plaintiff filed a motion seeking damages
based on the FBP's failure to provide medical care for his CIDP
and a number of other ailments.  (Docket Entry # 28).  For the
first time, plaintiff refers to "Title I ADA" and that "the
Supreme Court has found that under the ADA, Congress had the
right to override state and Bureau of Prisons immunity from
suit."  (Docket Entry # 28) (capitalization omitted).  Plaintiff
also submits that the August 9, 2013 letter gave him "the right
to bring suit against the defendants."  (Docket Entry # 28).  The
caption of the motion includes not only the FBP but also Regional
Counsel and the FBP's counsel in this action.

Title II of the ADA abrogates sovereign immunity for "two
classes of ADA claims:  (1) those alleging discrimination that
actually violates the Fourteenth Amendment; and (2) those
alleging discrimination that does not violate the Fourteenth
Amendment but that Congress may nonetheless prohibit because
doing so will prevent and deter unconstitutional discrimination."
<u>Kelley v. Mayhew</u>, 973 F.Supp.2d 31, 41 (D.Me. 2013); <u>accord</u> <u>U.S.
v. Georgia</u>, 546 U.S. 151, 159 (2006); <u>Toledo v. Sanchez</u>, 454 F.3d

24, 31 (1st Cir. 2006).  Title II prescribes that "no qualified

individual with a disability shall, by reason of such disability,

be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity."  42 U.S.C. §

12132 ("section 12132"); U.S. v. Georgia, 546 U.S. at 151-154.

To state a cause of action under Title II, "a plaintiff must

allege:  (1) that he is a qualified individual with a disability;

(2) that he was either excluded from participation in or denied

the benefits of some public entity's services, programs, or

activities or was otherwise discriminated against; and (3) that

such exclusion, denial of benefits or discrimination was by

reason of his disability."  Toledo v. Sanchez, 454 F.3d at 31;

see also Buchanan v. Maine, 469 F.3d 158, 173 (1st Cir. 2006)

(under applicable Eleventh Amendment analysis, if a "State's

conduct does not violate Title II, the court does not proceed to

the next step in the analysis").

The complaint does not refer to the ADA or otherwise set out

a cause of action under the ADA.  It is nevertheless well settled

that "a pro se complaint, however inartfully pleaded," is "held

to less stringent standards than formal pleadings drafted by

lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal

quotation marks omitted).  Courts therefore "endeavor, within

reasonable limits, to guard against the loss of pro se claims due

to technical defects."  <u>Dutil v. Murphy</u>, 550 F.3d 154, 158 (1st Cir. 2008).

Construing the motion and, more specifically, the reference to the ADA as part of the complaint exceeds the reasonable limits of construing a pro se complaint to guard against the loss of a claim due to a technical defect.  "[L]iberal construction is not the same thing as wholesale redrafting."  <u>Gilmore v. Hodges</u>, 738 F.3d 266, 281 (11th Cir. 2013).  The <u>Gilmore</u> court therefore refused to construe a pro se complaint that set out a separate ADA claim under section 12132 and a separate First Amendment retaliation claim as a combined "single claim brought under the ADA's anti-retaliation provision" under section 12203.  <u>Id.</u>; <u>see</u> <u>Wilbon v. Michigan Department of Corrections</u>, 2015 WL 1004707, at *10 (E.D.Mich. March 6, 2015) (pro se complaint, which did not allege "facts regarding:  (1) discrimination; (2) denial of the benefits of a "service, program, or activity;" or (3) provide a link between any alleged denial and his disability" deemed insufficient to set out ADA claim inasmuch as "'liberal construction does not require a court to conjure allegations on a litigant's behalf'").

Here, the complaint, which sets out inadequate treatment of plaintiff's CIDP and a denial of medical care, is devoid of any mention of the ADA or any facts to support an ADA cause of action.  <u>See</u>, <u>e.g.</u>, <u>Iseley v. Beard</u>, 2006 WL 2806985, at *4 (3rd

Cir. Oct. 2, 2006) (affirming summary judgment dismissing pro se inmate's ADA claim because it alleged "he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions"); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners" and "[t]he ADA does not create a remedy for medical malpractice"); Nails v. Laplante, 596 F.Supp.2d 475, at 481-82 (D.Conn. 2009) (dismissing inmate's ADA claim alleging denial of medical care because complaint failed to "include any non-conclusory allegations of discriminatory animus or ill will based on his disability and identifie[d] no program he could not participate in or any service that was denied as a result of his disability"); Carrion v. Wilkinson, 309 F.Supp.2d 1007, 1016 (N.D.Oh. 2004) (claims of being denied diabetic diet, as opposed to being denied "benefits of any services, programs, or activities provided for other non-disabled inmates," was not covered under ADA). The motion's mere reference to "discriminatory practices" and "accommodating disabled inmates," without facts to support the conclusory assertions, is not sufficient. See Wilbon v. Michigan Department of Corrections, 2015 WL 1004707, at *10 ("a prisoner pursuing an ADA claim based on exclusion from a 'prison service, program, or activity' or of discrimination because of his disability, cannot rely solely on

incompetent treatment for medical problems and expect to prevail under the ADA"). Accordingly, the motion does not provide a basis to avoid dismissal of the complaint.

It is also inappropriate to construe the motion as a motion to amend the complaint under Fed.R.Civ.P. 15(a) to include an ADA cause of action against the FBP, Regional Counsel and the FBP's counsel. The motion does not attach a proposed amended complaint or, as explained above, set out facts that would warrant relief under the ADA. In this court's discretion, such a construction is not appropriate.[8]

CONCLUSION

In accordance with the foregoing discussion, the motion to dismiss (Docket Entry # 9) is **ALLOWED**, the motion for damages (Docket Entry # 28) is **DENIED** and this case is dismissed with prejudice based on untimeliness.

---

[8] Assuming for purposes of argument that plaintiff has a cause of action under Title II, it is not necessarily untimely. See generally Toledo-Colon v. Puerto Rico, 812 F.Supp.2d 110, 119 (D.P.R. 2011) (noting that Title II of ADA does "not establish a limitations period" and that "[c]ourts apply either the state's personal injury statute or the state's analogous disability discrimination statute"); Willinghan v. Town of Stonington, 741 F.Supp.2d 331, 336 (D.Me. 2010); Sigros v. Walt Disney World Co., 190 F.Supp.2d 165, 168 (D.Mass. 2002) (Massachusetts three year statute of limitations for tort claims applied to ADA claim). The failure to construe the motion as a motion to amend therefore does not deprive plaintiff of a remedy on the basis of untimeliness. The Prison Litigation Reform Act, 42 U.S.C. § 1997e, still requires administrative exhaustion of an ADA claim under Title II. See Nottingham v. Richardson, 2012 WL 6019093, at *3 (5th Cir. Dec. 4, 2012).

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge